UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BABCOCK & WILCOX SOLAR HOLDINGS, LLC, et al., | )<br>)  CASE NO. 5:24-cv-00910-CEF<br>) |
| B&W, | )  JUDGE CHARLES E. FLEMING<br>) |
| v. | )<br>) |
| JAMES JACKSON, et al., | )<br>)  **MEMORANDUM OPINION AND** |
| Defendants. | )  **ORDER** |

### I. FACTUAL BACKGROUND

Defendants James Jackson and Collin Rhodes (collectively, "Defendants") were employees of B&W Babcock & Wilcox Solar Holdings, LLC ("B&W Holdings"), and Babcock & Wilcox Solar Energy, Inc. ("B&W Energy") (collectively, "B&W") until they were "involuntarily separated" from their employment in 2023. (ECF No. 1, Compl., PageID #6–8). As part of their involuntary separation and in exchange for severance pay, Defendants each signed a Confidentiality "Pledge" and Separation Agreement that forbade them from disclosing confidential information and trade secrets. (*Id.*). B&W paid Jackson and Rhodes $84,615.38 and $34,961.54 in severance, respectively. (*Id.* at PageID #7–8).

In 2024, B&W learned that Defendants provided affidavits (the "Jackson Affidavit" and the "Rhodes Affidavit") on behalf of plaintiffs in four lawsuits against B&W in New York state court. (*Id.* at PageID #8). The affidavits alleged, among other things, that:

- B&W Energy lacked corporate autonomy because B&W Holdings made all financial/economic decisions (ECF No. 1-1, PageID #46; 52; 58; 64; 69; 73; 77; 81);

- B&W Solar was undercapitalized, relied on influxes of cash from B&W Holdings to remain operational, and commingled funds with B&W Holdings (*Id.* at PageID #47; 53; 59; 65);

- B&W's business practices included declining to pay subcontractors for work when there was no written agreement in place (*Id.* at PageID #48–49; 54–55; 60–61; 66–67; 70–71; 74–75; 78–79; 82–83); and

- B&W Solar commingled funds between projects (*Id.* at PageID #49; 55; 61; 67).

B&W alleges that Defendants filed these affidavits as retribution because B&W fired Defendants, and that Jackson "solicited, incented and enticed Rhodes" to file an affidavit. (*Id.* at PageID #20–21). B&W alleges that the Affidavits contain "some information that was B&W's confidential information and trade secrets," and that Defendants must have disclosed additional confidential information and trade secrets to counsel for the plaintiffs and to plaintiffs in the New York lawsuits against B&W to prepare the affidavits. (*Id.* at 9–12).

On May 22, 2024, B&W filed a complaint against Defendants alleging misappropriation of trade secrets concerning information contained in a series of affidavits sworn by Jackson and Rhodes in four lawsuits pending in New York state court. (ECF No. 1). B&W brings claims for breach of contract (Counts I and II), violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Counts III and IV), violations of the Ohio Uniform Trade Secrets Act, Ohio Rev. Code Ann. §§ 1333.61, *et seq.* (Counts V and VI), tortious interference with contract (Count VII), tortious interference with business relationships (Count VIII), and civil conspiracy (Count IX). (*Id.* at PageID #11–24). B&W seeks compensatory damages, injunctions, costs and attorney's fees. (*Id.* at PageID #24–27).

## II. DEFENDANTS' MOTION TO DISMISS

Defendants have asked the Court to dismiss B&W's complaint under Fed. R. Civ. P. 12(b)(1) and (6). (ECF No. 11). Defendants argue that this Court should dismiss the Defend Trade Secrets Act (DTSA) and Ohio Uniform Trade Secrets Act (OUTSA) claims because B&W fails to allege that Defendants misappropriated protectable trade secrets. (ECF No. 11, PageID #119–24). Defendants also argue that if the Court dismisses the DTSA claim, then it should dismiss all other claims because it lacks jurisdiction over the remaining state law claims. (*Id.* at PageID #123).

Defendants' motion asks the Court to dismiss under Rule 12(b)(6): (1) B&W's other state law claims because OUTSA preempts them (*Id.* at PageID #127–28); (2) the tortious interference with contract claim because it is too speculative (*Id.* at PageID #125); (3) the tortious interference with business relationships claim because it does not identify the business relationships that Defendants allegedly interfered with (*Id.* at Page ID# 126); (4) the breach of contract claim because Plaintiff fails to allege that Defendants breached any of their agreements (*Id.* at PageID #128–29); and (5) the civil conspiracy claim because B&W must base this claim on an unlawful act not including breach of contract, and if the Court dismisses the other claims then there is no underlying claim to support it (*Id.* at PageID #130–31).

B&W responds that the Court should not dismiss any of their claims because B&W sufficiently alleges, in a short and plain statement as required by Rule 8(a), that Defendants misappropriated trade secrets under DTSA and OUTSA. (ECF No. 12, PageID #162–165). B&W also argues that even if the Court dismisses the DTSA claim, it still has subject matter jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. (*Id.* at PageID #159–160). Regarding its tortious interference with contract claim, B&W asserts that OUTSA does not preempt it because that claim is based on independent factual bases—namely, the

substance and timing of an email sent by Jackson, which B&W categorizes as "threatening." (*Id.* at PageID #167). Similarly, B&W's tortious interference with business relationships claim is based on Defendants' intent that the affidavits induce third parties not to do business with B&W. (*Id.* at PageID#166). B&W claims that it properly pleaded its breach of contract claims by alleging that Defendants agreed not to disclose confidential information, and that Defendants breached that obligation by signing the affidavits. (*Id.* at PageID #165). Finally, B&W based the civil conspiracy claim on Defendants' alleged breach of their respective Pledges and Agreements, in retribution for their respective separations of employment, which is in addition to Defendants' misappropriation of trade secrets. (ECF No 1, PageID#23–24). Defendants filed a reply brief in support of their Motion (ECF No. 13), and the matter is now ripe for adjudication.

### III. MOTION STANDARD

Defendants move to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF No. 11). The Court must first determine whether it has subject matter jurisdiction under Rule 12(b)(1), since lack of subject matter jurisdiction renders Defendants' Rule 12(b)(6) motion moot. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

A motion to dismiss pursuant to Rule 12(b)(1) may take the form of either a facial or factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial attacks challenge the sufficiency of the pleading itself. *Id.* When adjudicating a motion to dismiss based upon a facial attack, the court must accept all material allegations of the complaint as true and must construe the facts in favor of the non-moving party. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)). Factual attacks, by contrast, challenge the factual predicate for subject matter jurisdiction, regardless of what is or might be alleged in the pleadings. *Id.* With such a challenge, no

4

presumption of truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

Here, Defendants facially attack this Court's subject-matter jurisdiction, challenging whether the facts as alleged are sufficient to satisfy the amount-in-controversy requirement of diversity jurisdiction. Therefore, the Court will accept all material allegations in the Complaint as true and will construe facts in favor of B&W, the non-moving party. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998). Regardless of the type of attack, the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *See Giesse v. Sec'y of Dept. of Health & Human Servs.*, 522 F.3d 697, 702 (6th Cir. 2008); *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 1990).

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The "complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Com. Money Ctr, Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to Plaintiff, accepts the allegations of the complaint as true, and draws all reasonable inferences in Plaintiff's favor. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

## IV. DISCUSSION

### A. Jurisdiction

Defendants argue that if the Court dismisses Plaintiff's DTSA claim, then the Court no longer has jurisdiction because no federal questions remain, and the amount in controversy is below $75,000.  District courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.  18 U.S.C. § 1332(a).  When considering a motion to dismiss, the Court takes at face value a plaintiff's good-faith claim that the amount in controversy exceeds $75,000 unless it appears to a legal certainty that the claim is for $75,000 or less.  *Jones v. Knox Exploration Corp.*, 2 F.3d 181, 182 (6th Cir. 1993).  A corporation is a citizen of every State in which it is incorporated and of the State where it has its principal place of business.  18 U.S.C. SS 1332(c)(1).

B&W are corporations of Ohio and Illinois.  (ECF No. 1, PageID #2).  Jackson is a citizen of Alabama and/or Florida.  (*Id.*).  Rhodes a citizen of New Mexico.  (*Id.*).  This matter is thus between citizens of different states.  Defendants do not contest diversity in their motion to dismiss or reply in support of their motion to dismiss.  Instead, Defendants argue that B&W failed to allege that the amount in controversy exceeds $75,000.  (ECF No. 13 PageID #176).

B&W seeks "compensatory damages in an amount not less than $84,615.38 as to Defendant Jackson and $34,961.54 as to Defendant Rhodes."  (ECF No. 1, PageID #24).  B&W alleges that these damages are attributable to unjust enrichment through the severance pay provided to the Defendants in consideration of their promises under their Pledges and Agreements, which B&W allege Defendants breached.  (*Id.* at PageID #11–14).  This Court therefore has subject matter jurisdiction, since the parties are diverse and the amount in controversy exceeds $75,000.

6

B.     **Trade Secrets**

Moving on to Defendants' Rule 12(b)(6) arguments, courts routinely dismiss misappropriation of trade secrets claims under Rule 12(b)(6) when the complaint "consists virtually entirely of legal conclusions couched as . . . factual allegation[s]." *Murray Energy Holdings Co. v. Bloomberg, L.P.*, No. 2:15-CV-2845, 2016 WL 3355456, at *7–8 (S.D. Ohio June 17, 2016). A successful claim under the DTSA and OUTSA require showing: "(1) the existence of a trade secret; (2) acquisition of the trade secret as the result of a confidential relationship or through improper means; and (3) an unauthorized use of the trade secret." *Novus Grp., LLC v. Prudential Fin., Inc.*, 74 F.4th 424, 427–28 (6th Cir. 2023). The plaintiff must "identify a trade secret with specificity to separate the secret from general knowledge." *Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, 565 F. Supp. 3d 978, 991 (N.D. Ohio 2021) (quoting *AtriCure, Inc. v. Jian Meng*, 842 F. App'x 974, 980 (6th Cir. 2021)).

OUTSA and DTSA contain substantially similar definitions of "trade secrets." *Compare* 18 U.S.C. § 1839(3), *with* Ohio Rev. Code § 1333.61; *Presidio, Inc. v. People Driven Tech., Inc.*, 686 F. Supp. 3d 652, 683 (S.D. Ohio Aug. 11, 2023). DTSA defines "trade secret" as follows:

> The term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorized physically, electronically, graphically, photographically, or in writing if–
> (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

Trade secrets therefore have some rather obvious qualities. For one, in order to be a trade secret, the owner of the information "must take reasonable steps to keep it secret." *James B. Oswald Co. v. Neate*, 98 F.4th 666, 675 (6th Cir. 2024); 18 U.S.C. § 1839(3). Another quality of a trade secret is that it cannot be readily ascertainable by others outside the owner's confidence. *Niemi v. NHK Spring Co.*, 543 F.3d 294, 299 (6th Cir. 2008). Absent these requirements, information cannot be considered a trade secret protectable by the DTSA or OUTSA and thus cannot support a misappropriation of trade secrets claim.

      i.  *Reasonable measures*

Courts dismiss claims for misappropriation of trade secrets when a complainant fails to allege that they took reasonable measures to protect their trade secrets. *In Re Island Indus., Inc.*, No. 23-5200, 2024 WL 869858 at *1 (6th Cir. Feb. 29, 2024). A plaintiff does not take reasonable efforts to protect the secrecy of an alleged trade secret when, in the course alleging trade secret misappropriation, the plaintiff files the information that they allege is a trade secret on the public docket (not under seal). *Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, at *168 (E.D. Pa. June 13, 2017).

In *Nealey,* GEICO sought to remove a class action suit to federal court and, in doing so, used information that it alleged was a trade secret to prove that the amount in controversy exceeded CAFA's $5 million amount-in-controversy requirement. *Id.* at 160. GEICO did this on the public docket, not under seal. *Id.* at 168. The court held that GEICO's publication of its own alleged trade secrets in a public filing demonstrated its lack of reasonable efforts to protect the alleged trade secrets. *Id.*

The same outcome is appropriate here. B&W did not take reasonable efforts to protect its alleged trade secrets because it filed its alleged trade secrets in a public filing, not under seal, when

8

it filed its complaint. (ECF No. 1-1, PageID #44–88). Like *Nealey*, B&W could have asked the Court to file its complaint under seal. It did not do so. Therefore, the information in the affidavits cannot meet the definition of trade secret because B&W did not take reasonable measures to protect it.

> ii. *Information that is either not in the affidavits or readily ascertainable*

Even if B&W had filed its complaint under seal, it still cannot show that Defendants' affidavits contained trade secrets because the information alleged either (1) isn't there; or (2) is readily ascertainable. First, B&W alleges that the names, addresses, and contact information of B&W's business partners, vendors, clients and customers are trade secrets. (ECF No. 1, PageID #4). The affidavits do not contain the addresses or contact information of B&W's business partners, vendors, clients, or customers. (*See* ECF No. 1-1, PageID #44-83). The affidavits do not include the names of B&W's clients or customers. (*See Id.*). B&W also alleges that its "pricing information" is a trade secret. (ECF No. 1, PageID #4). The affidavits do not include any pricing information. (*See* ECF No. 1-1, PageID #44-83).

Second, Plaintiff alleges that the names of B&W's business partners and vendors are trade secrets. (ECF No. 1, PageID #4). The affidavits do include the names of business partners and vendors for B&W. (ECF No. 1-2, PageID #48). However, the names of the business partners and vendors that the affidavits mention—Green Street Power Partners LLC, Whitford, Greyco, and Smoke River—are readily ascertainable because they are in public filings related to the New York Lawsuits that detail the parties' relationships with B&W Solar and B&W Enterprises. (ECF No. 1, PageID #8–9). That information cannot be a trade secret because it is readily ascertainable through proper means. 18 U.S.C. § 1839(3)(B).

9

B&W also alleges that the affidavits contain information about B&W's business strategies—that B&W did not pay subcontractors for their work to recover losses. (ECF No. 1-1, PageID #48). This does not meet the definition of a trade secret because, if for no other reason, it is readily ascertainable that theft of valuable services works a financial boon to the thief.

### iii. Specificity

After ruling out the information in the affidavits that cannot be a trade secret because it is either not included or readily ascertainable, B&W's finances, business operations, and business strategies are the only remaining categories of trade secrets that Plaintiff listed in its complaint. The problem here is that B&W does not state what information about its finances, business operations, and business strategies in the affidavits constitute trade secrets.

A trade secret claimant must describe the secret with sufficient specificity so the court can assess its protectability and understand that its compilation is unique. *Sapir v. Rosen*, No. 20-CV-6169 (RA), 2021 WL 4482277, at *5 (S.D.N.Y. Sept. 30, 2021) (quoting *Sit-Up Ltd. v. IAC/InterActive Corp.*, No. 05 Civ. 9292 (DLC), 2008 WL 463884, at *10 (S.D.N.Y. Feb. 20, 2008). Courts dismiss complaints that allege general categories of confidential information without providing details to define the trade secrets because those allegations fail to put defendants on notice of what information they allegedly misappropriated and preclude the court from determining if the information could be a protectable trade secret. *Id.* at *7.

In *Sapir*, the plaintiff alleged that the defendant disclosed documents containing trade secrets, including documents describing its corporate structure and financial affairs, and attached those documents to the complaint. *Id.* at *2. The plaintiff alleged that the documents contained trade secrets but did not refer to any specific information in any of the attached documents. *Id.* at *3. The court, "[p]resented with a haystack of items in which potential trade secrets may lurk, . . .

. decline[d] [p]laintiffs' invitation to go searching for the theoretical needle" and dismissed the complaint. *Id.* at *7.

Just like in *Sapir*, Plaintiff identifies broad categories of information that could be trade secrets, attaches documents that allegedly contain those trade secrets, then leaves the Court to figure out what information, if any, is protectable. B&W alleges that B&W's finances, business operations, and business strategies are trade secrets. (ECF No. 1, PageID #4). B&W then alleges that Defendants disclosed trade secrets in the affidavits, which Plaintiff attached to the complaint as Exhibit E and Exhibit F, respectively. (*Id.* at PageID #9–10). Plaintiff alleges that "some of the information" in each of the affidavits was B&W's trade secrets but does not identify which specific information in the affidavits is a trade secret. (*Id.*). B&W's failure to identify what information in the affidavits they believe are trade secrets prevents this Court from discerning the protectability of specific information.

The affidavits that B&W allege are full of trade secrets contain none specifically identified or otherwise ascertainable by the Court. The Court **DISMISSES** Counts III, IV, V, and VI of B&W's complaint.

        **C.**    **Breach of Contract**

Defendants argue that this Court should dismiss B&W's breach of contract claims because B&W fails to identify what confidential information Defendants allegedly disclosed. (ECF No. 11, PageID #129). A breach of contract claim requires: (1) a contract; (2) plaintiff's fulfillment of its obligations under the contract; (3) defendant's failure to fulfill his obligation—*i.e.*, a breach; and (4) damages resulting from that failure. *Ross v. PennyMac Loan Servs. LLC*, 761 F. App'x 491, 495 (6th Cir. 2019). Conclusory pleadings with no supporting factual allegations cannot withstand a motion to dismiss. *Id.* at 495–96. Fed. R. Civ. P. 8 does not require "detailed factual

allegations." *U.S. v. Iqbal*, 556 U.S. 662, 678 (May 18, 2009) (quoting *Twombly*, 550 U.S. at 570). Rather, Fed. R. Civ. P. 8 requires sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.*

Here, B&W alleged the existence of a contract and attached those contracts as Exhibits A–D. (ECF. No. 1-1, PageID #28–43). Both Defendants signed a Confidentiality Pledge upon starting to work at B&W. (*Id.* at PageID #42–43). Both Defendants also signed Separation Agreements after B&W fired them. (*Id.* at PageID #28–41). B&W alleges, and Defendants do not contest, that B&W fulfilled its obligations under the Pledges and Agreements. (ECF No. 1, PageID #12–13).

B&W then alleges that Defendants breached those agreements when Defendants disclosed confidential information while preparing the affidavits for the New York lawsuits. (*Id.* at PageID #12–13). Defendants argue that the Court should dismiss Plaintiff's breach of contract claims because the claims are conclusory; B&W fails to identify the confidential information that the Defendants allegedly disclosed. (ECF No. 11, PageID #129).

B&W identifies categories of information that the contracts identify as confidential, including the names, addresses, and contact information of B&W's business partners, vendors, clients, and customers. (ECF No. 1, PageID #4). B&W also alleges that confidential information includes its finances, business operations, business strategies and pricing information. (*Id.*). B&W later alleges that "some of the information" in the affidavits was B&W's confidential information and attaches those affidavits as exhibits E and F. (*Id.* at PageID # 9–10). But B&W does not identify what, if any, information in the affidavits was confidential. This Court cannot know what information Plaintiff thinks is confidential because Plaintiff did not identify it.

B&W's breach of contract claims fail because they lack sufficient factual matter, making the pleadings conclusory. *Iqbal*, 556 U.S. at 678. The Court **DISMISSES** Counts I and II of B&W's complaint.

### D. Tortious Interference with Contract

Defendants next argue that this Court should dismiss B&W's tortious interference with contract claim (Count VII). (ECF No. 13, PageID #182). The elements of a claim for tortious interference with contract are: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *N. Canton Bd. of Educ. v. AT&T Inc.*, No. 5:16-CV-1420, 2017 WL 4430251, at *2 (N.D. Ohio Oct. 5, 2017). Here, the contract that B&W alleges Jackson induced Rhodes to breach is the Rhodes Agreement, which Plaintiff alleges Rhodes breached in Count Two. (ECF No. 1, PageID #21). It follows that, if Rhodes did not breach the Rhodes Agreement, then there can be no liability for tortious interference with contract because the third element fails.

B&W did not sufficiently allege that Rhodes breached the Rhodes Agreement. The Court dismissed the breach of contract claim against Rhodes for failure to state a claim, so it must also dismiss the tortious interference with contract claim because, absent a breach of contract, the third element fails. The Court **DISMISSES** Count VII of B&W's complaint.

### E. Tortious Interference with Business Relationships

Defendants argue that this Court should dismiss B&W' tortious interference with Business Relationships claim because Plaintiff did not identify any business relationship(s) that Defendants interfered with. (ECF No. 11, PageID #126). To prove a claim for tortious interference with business relationships, a plaintiff must show: (1) the existence of prospective contractual relations;

13

(2) the wrongdoer's knowledge of the prospective relations; (3) the wrongdoer's intentional interference with the relationship; (4) lack of justification; and (5) damages. *BCG Masonic Cleveland, LLC v. Live Nation Ent., Inc.*, 570 F. Supp. 3d 552, 557–58 (N.D. Ohio 2021). "A vague assertion that a party interfered with certain unspecified business relationships is insufficient to state a claim." *Id.* at 559; *see Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010) (dismissing tortious interference with business relationships claim for failure to specify what relationships defendant allegedly interfered with). Put simply: A plaintiff must identify the business relationship(s) with which the defendant allegedly interfered. *Id.* If he does not, then the Court dismisses the claim. *Id.*

Here, B&W fails to allege a specific business relationship with which Defendants allegedly interfered. Instead of identifying specific business relationships, B&W use the terms "business relationships" and "third parties." (ECF No. 1, PageID #21–23). Because these allegations lack the requisite specificity, the Court **DISMISSES** Count VIII of Plaintiff's complaint.

### F. Civil Conspiracy

Lastly, B&W alleges that Defendants maliciously conspired to create their affidavits to damage B&W in retribution for their firing. (*Id.* at PageID #23). A plaintiff claiming civil conspiracy must base it on an underlying tort. *Stiles v. Chrysler Motors Corp.*, 624 N.E.2d 238, 244 (Ohio Ct. App. 1993). A civil conspiracy claim is derivative, so it can only be maintained if the underlying tort remains. *Adams v. Margarum*, No. 16AP-515, 2017 WL 1902017, at *3 (Ohio Ct. App. May 9, 2017). Here, there are no remaining underlying tort claims to support the Plaintiff's claim for civil conspiracy. The Court **DISMISSES** Count IX of Plaintiff's complaint.

V. **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.  B&W has not identified any protectable trade secret and has failed to state a claim upon which relief can be granted as to its remaining claims.  This case is therefore **DISMISSED WITH PREJUDICE**

**IT IS SO ORDERED**

Dated: October 24, 2025

_____
**CHARLES E. FLEMING
U.S. DISTRICT COURT JUDGE**